c **UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GEARY MYERS,** | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:22-0402 |
| v. | : | (JUDGE MANNION) |
| **GEORGE M. LITTLE,** *et al.*, | : | |
| Defendants | : | |

**MEMORANDUM**

**I. BACKGROUND**

On March 17, 2022, Plaintiff, Geary Myers, an inmate confined at the Greene State Correctional Institution ("SCI-Greene"), Waynesburg, Pennsylvania, filed the above caption civil rights action, pursuant to 42 U.S.C. §1983. (Doc. 1). The action proceeds via an amended complaint, which was filed on September 29, 2022, and challenges incidents which occurred at Plaintiff's prior place of confinement, SCI-Dallas. (Doc. 22). The named Defendants are the following SCI-Dallas employees: Deputy Bohinski, Security Lieutenant Monko, and Lieutenant Bellas. Id. Plaintiff raises two claims; (1) Defendants Monko and Belles retaliated against Myers by falsifying information in his file which caused Myers to be arbitrarily subjected to prolonged isolation, avoided commutation process and transfer

far from his region; and (2) Defendant Bohinski had direct knowledge that Defendants Monko and Belles filed false notations in Myers' file in retaliation to Myers' complaints against the security office and he acquiesced in the retaliation by sanctioning Myers prolonged isolation and his transfer to SCI-Greene. Id.

Presently before the Court is Defendants' motion for judgment on the pleadings. (Doc. 38). The motion is ripe for disposition. For the reasons that follow, the Court will grant Defendants' motion for judgment on the pleadings.

## II. ALLEGATIONS IN AMENDED COMPLAINT AND EXHIBITS

Plaintiff alleges that he has been incarcerated within the Department of Corrections for the past twenty-seven years. (Doc. 22). During this time he "has not once been institutionally charged with fighting, assault or anything related to violence." Id. Plaintiff was "on the active mental health roster at SCI-Dallas during the allegations mentioned in the instant complaint." Id. He states that he "is labeled a litigious inmate within the DOC and is documented as such." Id.

On June 5, 2021, Plaintiff "was called for a legal visit to discuss his wrongful incarceration and potential Civil Action against the DOC with

multiple lawyers." Id. He states that "on June 4, 2021, administrative staff Bohinski was contacted about this visit." Id.

On June 17, 2021, Plaintiff was issued an Other Report #D470602 which stated the following:

> This is your notification of confinement under the DC ADM 802 Administrative Custody Section 1.B.1.F. The inmate has been charged with or is under investigation for a violation of facility rules and there is a need for increased control pending disposition of charges or completion of the investigation. This placement is for non-disciplinary reasons.

(Doc. 22 at 7).

On June 24, 2021, the Program Review Committee conducted an initial Administrative Custody ("AC") Hearing, continuing Plaintiff's present status pending Security review. (Doc. 22 at 9). Plaintiff states that at the hearing he "specifically gave the following complaint, in part, against Monko, 'Lieutenant Monko is harassing me and continues to do so, [and] I have done nothing and I'm requesting that Monko is reprimanded for this harassment'." (Doc. 22 at 2).

On June 30, 2021, Plaintiff claims that he "filed a request slip to Bohinski informing him specifically he would 'like to file a Civil Action against Monko and Belles for their retaliation against him' and requested that he protect him from their retaliation." (Doc. 22 at 3). On June 30, 2021, Plaintiff

received his second weekly AC Review, where it was determined that Plaintiff should be released to general population based on the following:

> Inmate Myers was reviewed by PRC following Security's recommendation to release to general population. Myers asked where he would be housed in general population. PRC encouraged him to work with the Unit Team to find a cellmate. PRC releases to general population effective this date. Inmate Myers should not be housed on H or I blocks per Security.

(Doc. 22 at 10).

Plaintiff remained in general population until July 6, 2021 when he was returned to AC status as follows:

> This is your notification of confinement under the DC ADM 802 Administrative Custody section 1.B.1.F. The inmate has been charged with, or is under investigation for, a violation of facility rules and there is a need for increased control pending disposition of charges or completion of the investigation. This placement is for non-disciplinary reasons.

(Doc. 22 at 11). On July 7, 2021, Plaintiff received his initial PRC Administrative Custody Hearing, in which the PRC determined that Plaintiff continue present status pending Security review and recommendation. Id. At the hearing Plaintiff argued that "this matter was already resolved and deemed false" and Bohinski stated that "this is a different matter and we have information that someone wants to harm you." (Doc. 22 at 3). Plaintiff alleges that "Bohinski did read [Plaintiff's] file and personally seen notations that [Plaintiff] was being accused of threatening a Correctional Officer with a

weapon, but he intentionally communicated falsely that the notations stated that it was [Plaintiff] who was in danger." Id.

On July 21, 2021, Myers states that he "went before Bohinski et al, and he informed them that the conditions that he was under was causing him to feel depressed and he wanted to know what was going on with the investigation" and "Bohinski specifically stated in part, '…Mr. Myers, please be patient. You will be transferred and we are holding you to keep you safe. This will be a non-disciplinary transfer and you will stay in the Eastern Region'." (Doc. 22 at 4).

On August 5, 2021, Myers "went before Bohinski et al., and requested a legal call and he specifically said in part, 'I would like to bring a civil action against your committee for holding me under these conditions, without a cup, television or radio knowing that I suffer from mental health issues." (Doc. 22 at 4).

On August 6, 2021, at his fifth weekly review by the PRC, Plaintiff "asked PRC about the legal call process and about his transfer process." (Doc. 22 at 15). Plaintiff's status was continued pending transfer. Id.

On August 11, 2021, Myers received his sixth weekly review. (Doc. 22 at 12). He claims he went before Bohinski and "informed him he was suffering due to inmates banging on their toilets all night and screaming on

- 5 -

their doors depriving him of sleep." (Doc. 22 at 4). Plaintiff stated that he "needed a legal phone call to central office to expedite [his] transfer to get [him] out of these conditions." Id. The PRC took the case number and telephone number under review. (Doc. 22 at 12). Plaintiff's status was continued and to be reviewed in one week. Id.

Later, on August 11, 2021, Plaintiff claims that "Bohinski and Belles did confer and Bohinski did direct Belles to provide Myers with an other report and place in Myers' transfer petition that Myers threatened to use a weapon on a correctional officer." (Doc. 22 at 4). Plaintiff was then served with a DC-ADM 802 Notification of Confinement which stated the following:

> This will serve as your notification of confinement in accordance with DC-Adm 802 1.B.1.A wherein the Dallas Security Department has through investigation determined that you are in danger from some person(s), or are a danger to some person(s) in the facility and that protection cannot be achieved by alternative measures. This action is initiated pending your transfer to another facility or other Administrative action and is not for disciplinary purposes.

(Doc. 22 at 13).

Plaintiff filed Grievance No. 955065 concerning his placement on AC status, appealing it to final review, where on April 6, 2022, the Secretary's Office of Inmate Grievances and Appeals upheld the denial of Plaintiff's grievance as follows:

> You claim in your grievance that administrative staff falsified documents, defamed your character and deliberately sabotaged your commutation process by placing you in the RHU. You claim they lied on a transfer petition. An investigation was conducted regarding your allegations. The record reflects that you were placed in the RHU because information was received that you were attempting to obtain a weapon to assault a staff member and that you were also planning to assault other inmates as well. The record reflects that this was discussed with you during your interview with Lt. Monko. The record reflects that a separation was filed and you were transferred to SCI-Greene. The record reflects that this was also discussed with you during your PRC reviews. You have failed to provide evidence that staff falsified documents. Therefore, your grievance is denied as well as your requested relief.

(Doc. 22 at 8).

Plaintiff files the instant action in which he claims that Defendants retaliated against him by entering false information into his file to have him removed from general population, placed in solitary confinement and subsequently transferred. (Doc. 22 at 5). Specifically, Plaintiff alleges Defendants Belles and Monko retaliated against him for making complaints and requesting a legal phone call by placing documents in his file causing him to be held in "solitary confinement." Id. He further alleges Defendant Bohinski is a "supervisory official" at SCI-Dallas who did not stop his transfer or "correct false information" Id. He claims that sometime between August 11, 2021 and September 23, 2021, "the Office of Population Management used Bohinski's false notation to categorize Myers' transfer as a 'disciplinary'

- 7 -

transfer and transferred him eight (8) hours away from his family." (Doc. 22 at 4). For relief, he seeks compensatory and punitive damages as well as to have the Defendants "contact the records department at SCI-Greene and inform them to remove the false notations in [Plaintiff's] file" and for Plaintiff to be "transferred back to his home region." Id.

### III. LEGAL STANDARD

A motion for judgment on the pleadings is the procedural hybrid of a motion to dismiss and a motion for summary judgment. Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc., 513 F. Supp. 2d 157, 162 (M.D. Pa. 2007). Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). To succeed on a Rule 12(c) motion, the movant must clearly establish that no material issue of fact remains to be resolved and that the movant "is entitled to judgment as a matter of law." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005); see 5C Charles Alan Wright et al., Federal Practice and Procedure § 1368 (3d ed. 2015). A Rule 12(c) motion for judgment on the pleadings is decided under a standard similar to a Rule 12(b)(6) motion to dismiss. See Zimmerman v. Corbett, 873 F.3d 414, 417 (3d Cir. 2017). That is, judgment

on the pleadings should be granted only when, accepting as true the facts alleged by the nonmovant and drawing "all reasonable inferences" in that party's favor, the movant is entitled to judgment as a matter of law. See id. (citation omitted). In deciding motions for judgment on the pleadings, courts may only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).

Courts must liberally construe complaints brought by *pro se* litigants. Sause v. Bauer, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

**IV. DISCUSSION**

    **A. Section 1983**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. §1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

### B. First Amendment Retaliation

Due to the inherent issues of security within a correctional institution, prisoners do not have a constitutionally protected right to remain at a particular facility, or housing unit within a facility. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983).

However, moving or transferring an inmate in retaliation for exercising his constitutional rights itself is a violation of the Constitution. See White v. Napolean, 897 F.2d 103, 111 – 12 (3d Cir. 1990); see also Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (holding that the relevant question in a retaliation case is not whether Plaintiff had a "protected liberty interest in the privileges he was denied, but whether he was denied those privileges in retaliation for exercising a constitutional right.").

"Retaliation against a prisoner for the exercise of his constitutional rights is unconstitutional." Bistrian v. Levi, 696 F.3d 352, 376 (3d Cir. 2012). "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prisoner officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotation marks and citations omitted); see also Watson v. Rozum, No. 13-3510, 2016 WL 4435624, at *4 (3d Cir. Aug. 23, 2016) (same). If a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to demonstrate he would have taken the same action even if the plaintiff had not engaged in the protected activity. See Rauser, 341 F.3d at 334.

Plaintiff alleges that Defendants retaliated against him for making complaints and requesting a legal phone call by placing him in Administrative Custody and ultimately transferring him from SCI-Dallas. (Doc. 22). Defendants concede that Plaintiff engages in a protected activity when making verbal complaints and sending request slips. (Doc. 39 at 3).

### a. Adverse Action

While Defendants concede that Plaintiff was engaged in a protected activity, Plaintiff fails to show he was subjected to an adverse action. The adverse action must be sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Mitchell, 318 F.3d at 530; Huertas v. Sobina, 476 F.Appx. 981, 984 (3d Cir. 2012). This is an objective inquiry, so the peculiarities of a plaintiff's subjective state of mind are not relevant. Bistrian v. Levi, 696 F.3d 352, 376 (3d Cir. 2012).

Here, Plaintiff alleges he was placed in Administrative Custody. Doc. 22). Administrative custody is not imposed as a punishment. See Fantone v. Latini, 780 F.3d 184, 187 (3d Cir. 2015). Administrative custody alone does not amount to an adverse action. See Allah v. Seiverling, 229 F.3d 220, 225-26 (3d Cir. 2000) (where an inmate alleges being placed in administrative custody reduced his access to phone call, commissary, and recreation as well as increased his confinement to his cell adequately alleged an adverse

action). Plaintiff does not allege anything more other than this solitary confinement placement. Accordingly, he does not plead enough to establish an adverse action was taken.

### b. Causal Connection

For there to be a causal connection between his protected activity and the action that allegedly constituted retaliation, Plaintiff must show either a suggestive temporal proximity between the protected activity and the allegedly retaliatory action or a pattern of antagonism coupled with timing to establish a causal link. Mearin v. Greene, 555 F.Appx. 156, 158-59 (3d Cir. 2014) (citing Lauren W. ex. rel. Jean W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007)).

Indeed, temporal proximity of more than a few days is insufficient to establish causation. Booze v. Wetzel, 2015 WL 5173937 at *13-16 (M.D. Pa. 2015). A protected activity and adverse action must be "very close" in time to prove causation. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001). While a period of two days has been found be sufficient to establish causation, see Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000), but a period of ten days was only sufficient if corroborated by other evidence, see Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003).

While Plaintiff does allege Defendants were aware of his complaints, he fails to allege any causal connection. Here, Plaintiff's own allegations reveal that Plaintiff's initial placement in administrative custody on June 17, 2021, was well before his June 24, 2021 complaint regarding Defendant Monko. (Doc. 22 at 2). Thus, Plaintiff's complaint fails to connect his initial placement to any protected activity.

On June 30, 2021, Plaintiff was released back into general population. (Doc. 22 at 4). On July 6, 2021, Plaintiff was again placed in Administrative Custody, and on September 23, 2021, Plaintiff was transferred to SCI-Greene. Id.

Here, Plaintiff fails to make any showing that Defendants engaged in a "pattern of antagonism," see Mearin, 555 F.Appx at 158-59, nor is there corroborating evidence to support a suggestive temporal proximity, see Shellenberger, 318 F.3d at 189. Plaintiff's own exhibit demonstrates that Plaintiff's July 6, 2021 placement in Administrative Custody was based on information received that Plaintiff was attempting to obtain a weapon to assault a staff member and that he was also planning to assault other inmates as well. (Doc. 22 at 8). To the extent that Plaintiff alleges that "Bohinski did read [Plaintiff's] file and personally seen notations that [Plaintiff] was being accused of threatening a Correctional Officer with a weapon, but

he intentionally communicated falsely that the notations stated that it was [Plaintiff] who was in danger," is of no moment, as both situations would require protective Administrative Custody confinement. Plaintiff offers nothing to refute this. As such, Plaintiff has failed to establish a causal connection between any complaint made by Plaintiff and Defendants' actions in placing Plaintiff in Administrative Custody for his own protection. Consequently, Defendants' motion for judgment on the pleadings as to Plaintiff's First Amendment retaliation claim will be granted.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for judgment on the pleadings.

A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 25, 2024**
22-0402-01